IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARLAN TEN PAS, an individual<br><br>Plaintiff<br><br>vs.<br><br>MCGLADREY LLP HEALTH AND WELFARE PLAN n/k/a RSM US LLP HEALTH AND WELFARE PLAN; and THE LINCOLN NATIONAL LIFE INSURANCE COMPANY<br><br>Defendants. | Case No. 18-cv-3694 |

## COMPLAINT

Plaintiff, Harlan Ten Pas, through his attorneys, Joel A. Stein and Lauren H. Lukoff, of Deutsch, Levy and Engel, Chartered, complains against Defendants, McGladrey LLP Health and Welfare Plan n/k/a RSM US LLP Health and Welfare Plan, and The Lincoln National Life Insurance Company, and states as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for declaratory and monetary relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).

## JURISDICTION

2. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA, 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

## VENUE

3. Venue is proper in the Northern District of Illinois pursuant to ERISA, 29 U.S.C. § 1132(e)(2), because the subject plan was administered partly in the Northern District of

473399

Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because some of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois.

## THE PARTIES

4. At all relevant times, Plaintiff was a Participant in an employee benefit plan (as more fully described below), as defined by ERISA, 29 U.S.C. § 1002(7). At all relevant times, the employee benefit plan was subject to ERISA, pursuant to 29 U.S.C. § 1003(a).

5. At all relevant times, Defendant McGladrey LLP Health and Welfare Plan n/k/a RSM US LLP Health and Welfare Plan (the "McGladrey Plan") has been an employee welfare benefit plan, as defined in 29 U.S.C. § 1002(1).

6. At all relevant times, Defendant, The Lincoln National Life Insurance Company, of Fort Wayne, Indiana ("Lincoln"), was the issuer and administrator of a policy under the McGladrey Plan, as more fully described below.

## BACKGROUND AND FACTS

7. Harlan was a partner with the Financial Services Group at RSM US LLP, formerly known as McGladrey LLP ("McGladrey"). Harlan works at McGladrey's Chicago Loop office, located at 1 South Wacker Drive, Suite 800, Chicago, Illinois 60606 (the "Chicago Office").

8. At all relevant times, McGladrey was the Group Policy Holder of a Group Long-Term Disability Insurance Policy, dated as of May 1, 2012 (the "Policy"). A true and correct copy of the Policy is attached hereto and made a part hereof as Exhibit A.

9. At all relevant times, Lincoln was the issuer and administrator of the Policy under the McGladrey Plan.

10. At all relevant times, Harlan was a Participant in the McGladrey Plan and an intended beneficiary under the Policy.

11. Upon information and belief, the Policy is no longer part of the McGladrey Plan, which is now known as the RSM US LLP Health and Welfare Plan.

12. The Policy provides for the payment of long-term disability benefits at 60% of a Participant's monthly earnings (*See* Exhibit A, p. 3).

13. The Policy defines a Participant's basic monthly earnings or pre-disability income as "the Insured Employees basic monthly salary or hourly pay from the Employer or Participating Employer before taxes on the Determination Date." (*See* Exhibit A, p. 4).

14. The Policy defines the "Determination Date" as "the last day worked just prior to the date the Disability begins." *Id.*

15. The Policy defines "Active Work" or "Actively at Work" and provides as follows:

> Active Work or Actively At Work means an Employee's full-time performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
> 1. the Employer's usual place of business; or
> 2. any other business location where the Employer requires the Employee to travel.

(*See* Exhibit A, p. 4).

16. The Policy further provides that "Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days….a Saturday, Sunday or holiday that is not a scheduled workday." *Id.*

17. The Policy further defines that a person is "Totally Disabled" if he is "unable to perform each of the Main Duties of his … occupation." (*See* Exhibit A, p. 10). The Policy further defines "Main Duties" as "those job tasks that are normally required to perform an occupation; and could not reasonably be modified or omitted." *Id.*

18. Prior to September 1, 2014, Harlan's salary was $12,500.00, on a semi-monthly basis, or $25,000.00 on a monthly basis.

19. Effective September 1, 2014, Harlan received a salary increase, which increased his pay to $30,000.00 on a monthly basis.

20. On Friday, August 29, 2014, Harlan was physically present and working in the Chicago Office for the full scheduled workday.

21. August 30, 2014, was a Saturday, not a scheduled work day, and was the first day of the three day Labor Day holiday weekend.

22. On Saturday, August 30, 2014, Sunday, August 31, 2014, and Monday, September 1, 2014, the offices of McGladrey were closed for the Labor Day holiday. None of these days was a scheduled work day.

23. On the evening of Sunday, August 31, 2014, Harlan was admitted to the emergency room of Oconomowoc Memorial Hospital in Oconomowoc, Wisconsin as the result of chest pains and discomfort. He was diagnosed with having had a mild heart attack.

24. Harlan underwent an angioplasty on Monday, September 1, 2014, which was the Labor Day holiday.

25. On the evening of Monday, September 1, 2014, Harlan sent an email to his co-workers to inform them of his heart attack and that he would be working from home for a couple of days.

26. On Monday, September 1, 2014, and Tuesday, September 2, 2014, Harlan worked remotely, which work included reviewing and sending electronic communications with clients and co-workers.

27. On Wednesday, September 3, 2014, Harlan returned to actively work in the Chicago Office, after being cleared by his doctors to resume his normal activities.

28. Later in the day on September 3, 2014, Harlan was admitted to Highland Park Hospital for observation, following a small left hemisphere basal ganglia stroke.

29. Harlan e-mailed his co-workers on September 4, 2014, informing them of his intent to work remotely that day and the next, Friday, September 5, 2014.

30. During this time, Harlan did perform his work remotely, including receiving and responding to emails from his co-workers and clients.

31. On September 5, 2014, Harlan was discharged from Highland Park Hospital.

32. The next morning, Saturday, September 6, 2014, Harlan suffered a hemorrhagic conversion, which is the cause of his present disability.

33. In 2014, Harlan applied for disability benefits under the Policy based on his salary of $30,000.00 monthly, which salary became effective on Monday, September 1, 2014.

34. By letter dated May 27, 2015, Lincoln informed Harlan that it determined, for purposes of the Policy, that he was disabled as of Sunday, August 31, 2014 (the "Disability Date") and that his monthly disability benefit would only be $15,000.00 per month, based on Harlan's monthly salary of $25,000.00 per month, as of Sunday, August 31, 2014.

35. By letter dated November 20, 2015, Harlan appealed Lincoln's decision to set his Disability Date as Sunday, August 31, 2014.

36. By letter dated February 12, 2016, Lincoln upheld its original decision to set Harlan's Disability Date as Sunday, August 31, 2014.

37. By letter dated May 27, 2016, Harlan exercised his final administrative appeal, again challenging Lincoln's decision to set his Disability Date as Sunday, August 31, 2014, a day that was not a scheduled work day.

38. By letter dated July 8, 2016, Lincoln upheld its decision to set Harlan's Disability Date as Sunday, August 31, 2014.

39. Harlan now brings this lawsuit challenging the determination that he was disabled as of Sunday, August 31, 2014, thereby denying him the increased disability benefits that correspond to his salary as of September 1, 2014.

40. Harlan was not disabled as of Sunday, August 31, 2014, as Harlan was Actively at Work on Wednesday, September 3, 2014 and continued to perform the Main Duties of his occupation up until the time he suffered his hemorrhagic conversion on the morning of September 6, 2014.

41. However, even if it was correctly determined that Harlan became disabled on Sunday, August 31, 2014, Harlan is still entitled to disability benefits based on his salary effective as of Monday, September 1, 2014, as the Policy expressly provides that since Harlan was Actively at Work on Friday, August 29, 2014, he could not, by definition, be disabled until, at the earliest, Tuesday, September 2, 2014, the next scheduled work day.

## COUNT I
### Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

42. Plaintiff reincorporates Paragraphs 1-39 of this Complaint as though fully set forth herein.

43. Harlan has exhausted his administrative remedies and has completed the appeals process.

44. Under ERISA, Harlan is entitled to bring this action to enforce his rights under the terms of the Plan 29 U.S.C. § 1132(a)(1)(B).

45. Harlan is entitled to the disability benefits as calculated pursuant to his increased salary, which increase became effective on September 1, 2014.

46. Harlan was not disabled as of August 31, 2014, as Harlan was Actively at Work on September 3, 2014, and continued to perform the Main Duties of his occupation up until the morning of September 6, 2014.

47. Between August 31, 2014 and September 6, 2014, Harlan was either conducting his work remotely or was physically present and working in the Chicago Office. In either event, he was performing the Main Duties of his occupation.

48. On September 2, 2014, Harlan worked remotely and, among other things, drafted and transmitted twenty emails to his clients and his co-workers.

49. On September 3, 2014, Harlan returned to work in the Chicago Office. Among other things, Harlan drafted and transmitted ten emails, including e-mails wherein Harlan rendered professional advice to clients.

50. On September 4, 2014, and September 5, 2014, Harlan worked remotely. Harlan transmitted twenty-six emails to clients and co-workers on September 4, 2014, and transmitted fifteen emails to clients and co-workers on September 5, 2014, among other things.

51. On the morning of September 6, 2014, Harlan suffered a hemorrhagic conversion, which is the cause of his disability.

52. Harlan drafted and transmitted a total of seventy-six emails to McGladrey clients and/or co-workers after August 31, 2014, the date on which Defendant alleges Harlan became disabled.

53. It is clear that, up until September 6, 2014, Harlan was performing the Main Duties of his occupation and was therefore not disabled under the terms of the Policy.

54. However, even if Harlan was unable to perform the Main Duties of his occupation as of August 31, 2014, Harlan would still be entitled to have his disability benefits calculated based on his increased salary effective September 1, 2014 because Harlan was not "disabled", as defined by the Policy, as of August 31, 2014.

55. The Policy provides that "[u]nless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days: (1) a Saturday, Sunday, or holiday that is not a scheduled workday." (*See* Exhibit A, p. 4).

56. Harlan was at work in the Chicago Office on Friday, August 29, 2014.

57. Since Harlan was "Actively at Work" on Friday, August 29, 2014, he remained "Actively at Work" through the three-day holiday weekend, including Monday, September 1, 2014 (the effective date of Harlan's salary increase), which was the Labor Day holiday.

58. Accordingly, even if Defendant is correct that initial decision that Harlan became unable to perform the duties of his occupation on Sunday, August 31, 2014, Harlan could not declared "disabled" under the Plan until he was no longer "Actively at Work".

59. The first date that Harlan could no longer be "Actively at Work" was Tuesday, September 2, 2014, after McGladrey was closed for the weekend and the Labor Day holiday.

60. Therefore, Harlan is entitled to have his disability benefits calculated based on his increased salary, which became effective on September 1, 2014.

61. Harlan was sixty years old as of the date of his disability. Under the terms of the Policy, Harlan is entitled to sixty months of disability payments.

62. Harlan's disability payments were calculated at 60% of his monthly salary of $25,000.00, which is $15,000.00 per month, for a total of 60 months. This is a total disability payment of $900,000.00.

63. Harlan's disability payments should have been calculated at 60% of his monthly salary effective September 1, 2014, which was $30,000.00 per month. This would result in a disability payment of $18,000.00 per month for a total of 60 months.

64. Harlan requests this Honorable Court declare that Harlan is entitled to disability benefits calculated based on his monthly salary effective September 1, 2014.

WHEREFORE, the Plaintiff, Harlan Ten Pas, respectfully requests that this Honorable Court grant Plaintiff the following relief:

i. Declare that the terms of the Policy and the Plan have been violated;

ii. Declare that Harlan is entitled to monthly disability benefits calculated based on his salary of $30,000.00 per month;

iii. Order that the McGladrey Plan pay Harlan the difference in disability benefits that he should have been receiving;

iv. Order that the McGladrey Plan pay Harlan any future disability benefits based on his salary of $30,000.00 per month;

v. Award Harlan reasonable attorneys' fees and costs of suit pursuant to 29 U.S.C. § 1132(g);

vi. Award any such further relief that this Honorable Court deems just and equitable.

## COUNT II
### Breach of Contract against Lincoln National Life Insurance Company
### (in the alternative)

65. Plaintiff reincorporates Paragraphs 1-64 of this Complaint as though fully set forth herein.

66. Upon information and belief, the Policy is no longer part of the McGladrey Plan, which is now known as the RSM US LLP Health and Welfare Plan.

67. At all relevant times, Lincoln was the issuer and administrator of the Policy.

68. At all relevant times, Lincoln rendered decisions as to the Determination Date of Harlan's disability and the corresponding benefits that Harlan was to receive under the Policy that Lincoln issued.

69. Harlan was an intended beneficiary of the contract between Lincoln and McGladrey for the Policy.

70. The Policy provides that "[u]nless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days: (1) a Saturday, Sunday, or holiday that is not a scheduled workday." (*See* Exhibit A, p. 4).

71. Harlan was at work in the Chicago Office on Friday, August 29, 2014.

72. Since Harlan was "Actively at Work" on Friday, August 29, 2014, he remained "Actively at Work" through the three-day holiday weekend, including Monday, September 1, 2014 (the effective date of Harlan's salary increase), which was the Labor Day holiday.

73. Accordingly, even if Defendant is correct that initial decision that Harlan became unable to perform the duties of his occupation on Sunday, August 31, 2014, Harlan could not declared "disabled" under the Plan until he was no longer "Actively at Work".

74. The first date that Harlan could no longer be "Actively at Work" was Tuesday, September 2, 2014, after McGladrey was closed for the weekend and the Labor Day holiday.

75. Lincoln breached the terms of the Policy by failing to award Harlan benefits at 60% of his monthly earnings based on his salary effective September 1, 2014.

WHEREFORE, the Plaintiff, Harlan Ten Pas, respectfully requests that this Honorable Court grant Plaintiff the following relief:

vii. Declare that the terms of the Policy and the Plan have been violated;

viii. Declare that Harlan is entitled to monthly disability benefits calculated based on his salary of $30,000.00 per month;

ix. Order that Lincoln, as issuer of the Policy, pay Harlan the difference in disability benefits that he should have been receiving;

x. Order that Lincoln, as issuer of the Policy, pay Harlan any future disability benefits based on his salary of $30,000.00 per month;

xi. Award any such further relief that this Honorable Court deems just and equitable.

Respectfully submitted,
Harlan Ten Pas

By: /s/ Joel A. Stein
One of his Attorneys

Joel A. Stein (ARDC No. 3122304) (stein@dlec.com)
Lauren H. Lukoff (ARDC No. 6297069) (llukoff@dlec.com)
Deutsch, Levy & Engel, Chartered
225 West Washington, Suite 1300
Chicago, Illinois 60606
T. (312) 346-1460
F. (312) 346-1859
*Attorneys for Plaintiff, Harlan Ten Pas*

473399