IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HARLAN TEN PAS | ) |
| | ) Case No. 1:18-cv-03694 |
| *Plaintiff* | ) |
| | ) Judge Sara L. Ellis |
| *v.* | ) |
| | ) Magistrate Judge Jeffrey Cole |
| THE LINCOLN NATIONAL LIFE | ) |
| INSURANCE COMPANY | ) |
| | ) |
| *Defendant* | ) |

---

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY'S**

**RESPONSE IN OPPOSITION TO**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Warren von Schleicher (IL – 6197189)
SMITH | VON SCHLEICHER + ASSOCIATES
180 North LaSalle St. Suite 3130
Chicago, Illinois 60601
P  312.541.0300  |  F  312.541.0933
warren.vonschleicher@svs-law.com

## INTRODUCTION

The Lincoln National Life Insurance Company ("Lincoln National") continues to pay monthly Total Disability benefits to Harlan Ten Pas ("Ten Pas") in accordance with the terms of the ERISA governed Group Policy issued to his employer, McGladrey LLP. Ten Pas, however, disputes Lincoln National's determination of the monthly benefit amount. He concedes that the standard of judicial review is the arbitrary and capricious standard. Under the arbitrary and capricious standard, Lincoln National's determination prevails as long as it has rational support in the administrative record.

Lincoln National reasonably determined that Ten Pas satisfied the Group Policy's definition of Total Disability as of Sunday August 31, 2014, when he sustained a heart attack from which he never recovered. After August 31, Ten Pas never resumed his responsibilities as a tax partner at McGladrey and never performed "each of the Main Duties" of his Own Occupation, as specified by the Group Policy's definition of Total Disability.

Ten Pas, in his summary judgment brief, does not contest that Lincoln National reasonably determined he was functionally unable to work when he sustained his heart attack on Sunday August 31 and thereafter. Nor does he contest that as of Sunday he was unable to perform each of the Main Duties of his occupation. His sole argument to overturn Lincoln National's discretionary decision is that as a matter of contract interpretation, it was impossible for him to satisfy the definition of Total Disability until Tuesday September 2, which was the first scheduled workday after the Labor Day holiday.

He points to the Group Policy's "Active Work" provision, which states that insured employees are considered to be in "Active Work" status during certain non-workday periods of absence such as weekends, holidays, and vacations. He endeavors to use the Active Work

provision to create the fiction that he could not be disabled on Sunday August 31 and Monday September 1, even though he was hospitalized in intensive care at that time. Employing the artifice of Active Work, he insists that his Total Disability began after the Labor Day holiday ended, on Tuesday September 2, and his monthly Total Disability benefit should include his anticipated September salary increase.

 Ten Pas, however, disregards how "Active Work" functions within the Group Policy. The Active Work provision—a specifically defined term in the Group Policy—functions as an on/off switch to determine when insurance coverage begins and ends, not when Total Disability occurs or how benefits are calculated. The Active Work provision ensured that Ten Pas's disability coverage continued over the weekend to Sunday August 31, when he sustained his heart attack. Nothing in the Active Work provision operates to change the date an employee becomes Totally Disabled, or to determine how monthly disability benefits are calculated. That function is served by the Group Policy's provision for "Basic Monthly Earnings" and the "Determination Date."

 The Group Policy provides that monthly Total Disability benefits are calculated based on 60% of the employee's monthly salary in effect on the "Determination Date," defined as "last day worked just prior to the date the Disability begins." The Active Work provision plays no role. Lincoln National reasonably determined that the last day Ten Pas worked prior to the date his Total Disability began was Friday August 29, at which time his monthly salary was $25,000. His monthly Total Disability benefit, therefore, is $15,000 per month before offsets (60% of $25,000). Lincoln National's determination has rational support in the administrative record, and therefore was not arbitrary and capricious.

**ARGUMENT**

**I.     Ten Pas Fails to Apply the Arbitrary and Capricious Standard.**

Ten Pas concedes that the Group Policy vests Lincoln National with discretionary authority, and that Lincoln National's determination is reviewed by the Court by applying ERISA's arbitrary and capricious standard. But he conflates judicial review under the arbitrary and capricious standard into *de novo* judicial review, and improperly relies on state law summary judgment standards. He protests that summary judgment is a "drastic measure" that should be denied when "a reasonable person could draw divergent inferences" from the undisputed facts, quoting *Purtill v. Hess*, 111 Ill.2d 229, 240, 489 N.E.2d 867, 870 (1986) and *Pyne v. Witmer*, 129 Ill.2d 351, 359, 540 N.E.2d 1304, 1308 (1989). (Pl. Br. pg. 1).[1] Summary judgment, however, is precisely the mechanism by which ERISA cases governed by the arbitrary and capricious standard are adjudicated and decided.

The Seventh Circuit instructs that the summary judgment standard "operates somewhat differently when we are looking at the determination of an ERISA plan administrator whose decisions are entitled to deferential review (that is, whose decisions may be set aside only if they are arbitrary and capricious)." *Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 375 (7th Cir. 2009). Whether the evidence, construed in the light most favorable to the plaintiff, might support the plaintiff's position is completely irrelevant. "[W]here an ERISA plan administrator moves for summary judgment, the umbra of the arbitrary-and-capricious standard of review has the effect of nearly eclipsing the requirement to construe all inferences in favor of the non-movant." *Fischer v. Liberty Life Assur. Co. of Boston*, No. 05 C 3256, 2008 WL

---

[1] Ten Pas's summary judgment brief incorrectly attributes his summary judgment standard to a Seventh Circuit decision that cites *Purtill*. (Pl. Br. pg. 1). However, his standard is quoted directly from *Purtill* and *Pyne*, the latter of which he fails to cite in his brief.

3

4874302, at *4 (N.D. Ill. June 16, 2008), *aff'd*, 576 F.3d at 375-377. A plaintiff cannot defeat summary judgment in an ERISA case by raising "debatable points" and proclaiming that disputed questions of fact exist. "[R]aising debatable points is insufficient to defeat summary judgment under the arbitrary and capricious standard of review." *Id.* at *6 (internal quotations omitted). "The question, we repeat, is whether Liberty's decision … finds rational support in the record." *Fischer*, 576 F.3d at 376. "That is not to say that the evidence *compelled* Liberty's decision; it is merely to say that the evidence permitted it." *Id.* at 377.

Applying the arbitrary and capricious standard, the administrator's determination prevails "so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Militello v. Central States, Southeast & Southwest Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir.), *cert. denied*, 543 U.S. 869 (2004) (quoting *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996)); *accord Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017). "[T]he reviewing court does not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir.), *cert. denied*, 546 U.S. 1033 (2005). "Instead, the only question for the court is whether the administrator's decision was completely unreasonable." *Id.* (citations omitted).

The interpretation and harmonization of ERISA plan terms is precisely the type of discretionary function that the arbitrary and capricious standard entrusts to the administrator. "Resolving how the terms relate to one another calls for a detailed interpretative process, and ERISA permits that process to be entrusted to the [administrator]." *Frye v. Thompson Steel Co., Inc.*, 657 F.3d 488, 495 (7th Cir. 2011). *See also Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 890 (7th Cir. 2012) (the ERISA administrator's "use of interpretative tools"

4

to harmonize plan terms is entitled to "deferential consideration by a reviewing court") (quoting *Frye*, 657 F.3d at 493); *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997) ("When as in this case the plan document does not furnish the answer to the question, the answer given by the plan administrator, when the plan vests him with discretion to interpret it, will ordinarily bind the court.").

"Put simply, an administrator's decision will not be overturned unless it is 'downright unreasonable.'" *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir.), *cert. denied*, 549 U.S. 884 (2006) (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005), quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004)).

## II. Lincoln National's Determination has Rational Support and was Not Arbitrary and Capricious.

### A. Lincoln National reasonably determined Ten Pas's Disability benefit based on his salary in August 2014.

Lincoln National, in its summary judgment brief, articulates its reasonable basis for finding that Ten Pas satisfied the Group Policy's definition of Total Disability on Sunday August 31, 2014, when he sustained his heart attack that required surgical treatment and hospitalization in the intensive care unit. The heart attack precipitated a sequence of medical events from which Ten Pas never recovered. He was hospitalized every day from August 31 to September 12, 2014. (¶¶ 25-36).[2] McGladrey confirmed that after August 31, he billed no time and had no time sheets. After August 31, Ten Pas was never able to resume his responsibilities of a lead tax partner at McGladrey and perform "each of the Main Duties" of his Own Occupation, as specified by the Group Policy's definition of Total Disability.

---

[2] Citations to "¶ __" are to the corresponding paragraph of the Joint Statement of Undisputed Material Facts (ECF Doc. 48).

Having reasonably determined when Total Disability commenced, Lincoln National calculated his monthly Total Disability benefit by applying the Group Policy's benefit calculation provisions. The Group Policy provides that the monthly Total Disability benefit equals 60% of the insured employee's basic monthly salary in effect "**on the Determination Date**." (¶¶ 18, 19) (emphasis added). The "Determination Date" means "the last day worked just prior to the date the Disability begins." (¶ 19). The last day Ten Pas worked prior to the date his Total Disability began was Friday August 29, at which time his monthly salary was $25,000. His monthly Total Disability benefit before offsets, therefore, was 60% of $25,000, or $15,000 per month.

Ten Pas, in his summary judgment brief, does not contest that Lincoln National reasonably determined he was functionally unable to work as a lead tax partner when he sustained his heart attack on Sunday August 31 and thereafter. Nor does he contest that as of Sunday he was unable to perform each of the Main Duties of his occupation. Having failed to challenge Lincoln National's determination that he became unable to fulfill his occupational duties on Sunday August 31, he forfeits and concedes the point on summary judgment. *See Berg v. New York Life Ins. Co.*, 831 F.3d 426, 429 (7th Cir. 2016) (holding that "arguments not raised in motion for summary judgment are waived"); *Folkerts v. Seterus, Inc.*, No. 17 C 4171, 2019 WL 1227790, at *11 (N.D. Ill. Mar. 15, 2019) ("Accordingly, the Court regards as waived any argument that Plaintiffs are entitled to summary judgment on this claim."); *Pietrzycki v. Heights Tower Service, Inc.*, 290 F.Supp.3d 822, 843 n.10 (N.D. Ill. 2017) (by failing to raise argument in opening brief the movant "waived this argument in the context of their motion for summary judgment"); *Young v. C.H. Robinson Worldwide, Inc.*, No. 06 C 1081, 2007 WL 4365334, at *5 n.4 (N.D. Ill. Dec. 11, 2007) (party waived summary judgment argument by failing to include it in its opening

brief). *See also Medical Assur. Co., Inc. v. Miller*, No. 4:08-cv-29, 2010 WL 2710607, at *4 (N.D. Ind. July 7, 2010) ("Raising an argument generally in a motion [ ] does not give a litigant license to be vague in his original submissions and provide the necessary detail in his reply.") (citations omitted).

## B. Benefits are calculated based on the *Determination Date*, which is the last day worked before Disability begins. The "Active Work" provision plays no role.

Ten Pas ignores and renders superfluous the Group Policy's express provision for calculating monthly Total Disability benefits based on his salary on the "Determination Date." Instead, his sole basis for contesting Lincoln National's determination rests on a fundamentally flawed interpretation of the Group Policy's "Active Work" provision. Active Work functions to continue the employee's insurance coverage during periods of absence from work such as during holidays, weekends, and vacations. Specifically, the Active Work provision states, "*Unless disabled on the prior workday or on the day of absence*, an Employee will be considered Actively at Work…" during holidays, weekends, vacations, and non-medical leaves of absence. (¶ 21) (emphasis added). Ten Pas disregards the italicized language and declares himself "Actively at Work" throughout the Labor Day weekend. As Lincoln National explained during the administrative proceedings, Ten Pas was considered Actively at Work until Sunday August 31, when he became disabled. (¶ 89). As of Sunday, Ten Pas was "*disabled … on the day of absence*." Under the Group Policy's terms, Active Work ends when disability begins.

According to Ten Pas, however, "Active Work" functions to create the fiction that he was fully capable of working and not Totally Disabled *until the next scheduled work day* following the Labor Day weekend. (Pl. Br. pg. 8). He contends that as a matter of contract interpretation, it was impossible for him to satisfy the definition of Total Disability until Tuesday September 2, because he was considered to be in "Active Work" status during the Labor Day holiday. (Pl.

7

Mem. pgs. 7-8). Having moved the date Total Disability began from Sunday August 31 to Tuesday September 2 through the artifice of Active Work, he asserts that his monthly Total Disability benefit should be calculated to include his desired September pay raise.

Ten Pas's manipulation of the Active Work provision is completely irrelevant to the calculation of his monthly Total Disability benefit. Benefits are calculated based on his monthly salary on the Determination Date—the "last day [Ten Pas] worked just prior to the date the Disability begins"—which Lincoln National reasonably determined was Friday August 29 regardless of whether Disability began on Sunday August 31 or Tuesday September 2. It is undisputed that Ten Pas's basic monthly salary on the Determination Date of Friday August 29 was $25,000.

Moreover, Ten Pas disregards how "Active Work" functions within the Group Policy as a whole. As a defined term, Active Work applies only in provisions of the Group Policy that expressly incorporate that defined term. Ten Pas treats "Active Work" as an *à la carte* item that can be inserted and rearranged anywhere in the Group Policy for any reason he desires, even in contractual provisions that explicitly utilize different defined terms and make absolutely no reference to Active Work. *See Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) ("[T]he plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement."); *accord Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010).

Active Work, however, appears in the sections of the Group Policy that determine when coverage begins and ends, namely, in the provisions that govern the "Effective Date" of coverage and "Individual Termination of Coverage." (¶¶ 20, 22). Insurance coverage becomes effective on the date an employee "resumes Active Work, if not Actively at Work on the day he or she

8

becomes eligible." (¶ 20). Insurance coverage terminates when an employee ceases Active Work. (¶ 22). To ensure continuous coverage during non-workday periods of absence such as vacations, weekends and holidays, the Group Policy provides that insured employees are considered to be in Active Work on those days unless they become disabled. (¶ 21). Otherwise, Ten Pas would have had no insurance coverage when he sustained his heart attack on Sunday.

By contrast, Active Work appears nowhere in the definition of Total Disability. Nor does Active Work appear in any of the Group Policy's provisions for calculating monthly Total Disability benefits, including "Basic Monthly Earnings" and the "Determination Date." And Active Work does not appear in the provision of the Group Policy that determines when benefits become payable, called the "Elimination Period," which is the 180-day period during which the insured employee must be disabled before benefits become payable. (¶¶ 11, 13).

Applying the Group Policy's terms, an insured employee is Totally Disabled if due to a medical condition he is "unable to perform each of the Main Duties of his or her Own Occupation." (¶ 7). Total Disability, thus, utilizes a functional test. When an insured employee's medical condition renders him functionally disabled from working, he has satisfied the Total Disability definition, regardless of whether the medical event occurred on a workday, weekend, or holiday. If an employee leaves on a two week vacation and sustains a disabling injury on day one, the employee is Totally Disabled at that time. The Group Policy does not suspend and toll Total Disability until the vacation was supposed to end and the next scheduled workday finally rolls around two weeks later, while in the interim creating the fiction that the employee was not Totally Disabled because coverage continues during vacations via "Active Work." Yet that is precisely the absurd reading of the Group Policy that Ten Pas insists is the only possible reasonable interpretation.

The Group Policy specifies that the monthly Total Disability benefit is calculated based on 60% of the employee's basic monthly salary "on the Determination Date," defined as "the last day worked just prior to the date the Disability begins." (¶ 19). Ten Pas, however, endeavors to cut and paste "Active Work" into the definition of Determination Date, so that benefits would be calculated based on "the last day [of Active Work]," contrary to the Group Policy's express terms. *See Schultz*, 670 F.3d at 838 ("All language of a plan should be given effect without rendering any term superfluous.").

The Group Policy's "Benefit" provision states that monthly Total Disability benefits become payable "after the completion of the Elimination Period." (¶ 16). The Elimination Period is a 180-day period that "begins on the first day of Disability." (¶ 11). Ten Pas's Total Disability began when he sustained his heart attack on Sunday, and monthly Total Disability benefits became payable 180 days later. Again, Ten Pas endeavors to graft "Active Work" onto the Elimination Period, so that the 180-day period would begin on the last day of Active Work rather than on "the first day of Disability" as specified by the Group Policy's terms.

Notably, during the administrative appeal, Ten Pas argued that he went to his office at McGladrey on Wednesday September 3, but due to his progressive symptoms he left the office at noon and was hospitalized that afternoon. (¶¶ 33, 56). Ten Pas's unsuccessful attempt to return to the office does not reset the date Total Disability began from Sunday to Wednesday. The Group Policy states that the Elimination Period nevertheless "begins on the first day of Disability" and contemplates that "the Insured Employee may return to full-time work" while completing the Elimination Period. (¶ 11).

Ten Pas postulates that "similar decisions" by ERISA administrators have been found to be arbitrary and capricious, citing *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461-62 (7th

Cir. 2001) and *Filipowicz v. American Stores Ben. Plans Committee*, 56 F.3d 807, 814 (7th Cir. 1995). In *Hess*, the administrator's interpretation rendered crucial group policy terms superfluous, and in *Filipowicz*, the administrator limited the duration of benefits to twelve months despite the absence of any such limitation in the group policy. Neither case addressed the interplay between "Total Disability," "Determination Date," "Basic Monthly Earnings," and "Active Work" at issue in the present lawsuit. Simply pointing to cases in which an administrator's decision was arbitrary and capricious is not authority that Lincoln National's determination of Ten Pas's claim was arbitrary and capricious.

Ten Pas bemoans that Lincoln National "utterly fails to explain" how the Active Work provision permits his Total Disability to occur any earlier than Tuesday September 2. (Pl. Br. pg. 8). Yet Lincoln National, in its initial determination letter and on administrative appeal, articulated its interpretation and application of the Group Policy's provisions and how they relate to its medical and occupational findings, including "Total Disability," "Determination Date," "Basic Monthly Earnings," and "Active Work." (¶¶ 63-71, 88-90, 95-97). ERISA requires that the administrator convey the basis for its determination, not engage in a debate and persuade. All the administrator "has to give the applicant is the reason for the denial of benefits; he does not have to explain to him why it is a *good* reason." *Gallo*, 102 F.3d at 923. And "[w]hen challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality." *Id.* The administrator "is not limited to what he told the applicant." *Id. See also Estate of Jones v. Children's Hospital & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018) ("While an administrator's decision must have rational support, it 'need not explain the reasoning behind the reasons, … that is, the interpretive process that generated

the reason for the denial.") (quoting *Herman v. Central States, Southeast & Southwest Areas Pension Fund*, 423 F.3d 684, 693 (7th Cir. 2005)).

Ten Pas simply disagrees with Lincoln National's conclusions. But "[r]aising debatable points does not entitle [a plaintiff] to a reversal under the arbitrary-and-capricious standard." *Sisto v. Ameritech Sickness & Acc. Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005). In light of the sequence of medical events, hospitalization every day since Sunday August 31, and absence of evidence that Ten Pas performed each of the Main Duties of his occupation thereafter, Lincoln National reasonably determined that Ten Pas's Disability began on August 31, and calculated his monthly benefit based on his salary as of the Determination Date on Friday August 29 in accordance with the Group Policy's terms. Lincoln National's determination has rational support in the administrative record and was not arbitrary and capricious.

## CONCLUSION

Lincoln National's determination has rational support in the administrative record and in the Group Policy's terms. Ten Pas's motion for summary judgment should be denied, and judgment should be entered for Lincoln National including an award of attorneys' fees and costs under 29 U.S.C. §1132(g) and the Federal Rules of Civil Procedure.

                                              Respectfully submitted,

Warren von Schleicher (IL-6197189)    By: */s/ Warren von Schleicher*
SMITH | VON SCHLEICHER + ASSOCIATES        Attorney for Defendant,
180 North LaSalle St. Suite 3130               The Lincoln National Life Insurance Company
Chicago, Illinois 60601
P  312.541.0300  |  F  312.541.0933
warren.vonschleicher@svs-law.com

**CERTIFICATE OF SERVICE**

I certify that on May 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record listed below:

Joel A. Stein
Lauren H. Lukoff
Deutsch, Levy & Engel, Chartered
225 West Washington, Suite 1300
Chicago, Illinois 60606
stein@dlec.com
llukoff@dlec.com

*/s/ Warren von Schleicher*
SMITH | VON SCHLEICHER + ASSOCIATES
180 N. LaSalle Street Suite 3130
Chicago, Illinois 60601
P 312.541.0300 | F 312.541.0933
warren.vonschleicher@svs-law.com